UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TAMI LAINE DUVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03768-SEB-DLP |
| | ) | |
| PAM FERGUSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DISMISSING DEFENDANTS FERGUSON, GRAY, CARTER, EVANS,
HENDRIX, AND NALLY WITHOUT PREJUDICE**

Plaintiff Tami Laine Duvall, a state prisoner, filed this civil action alleging that she was permanently banned from participating in the USDOL Apprenticeship program by her former employer in retaliation for accusing the company of fraudulent activity and because of her age. The defendants sought dismissal of this action on the basis that Ms. Duvall failed to exhaust her available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.

On November 18, 2021, and March 22, 2021, the Court conducted a hearing on the defendants' exhaustion defense pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).[1] All defendants except Charlene Burkett, who withdrew her exhaustion defense during the hearing, joined in this affirmative defense. For the reasons explained below, the Court accepts the defendants' exhaustion defense, and the claims against defendants Pam Ferguson, Tom Gray, Rob Carter, Doug Evans, James Hendrix, and John Nally are **DISMISSED WITHOUT PREJUDICE**.

---

[1] The first portion of this hearing was adjourned abruptly when notice was received of a possible exposure to COVID-19 by a court employee, requiring all persons working in proximity to that employee to also quarantine for 14 days. The hearing resumed and concluded on March 22, 2021.

# I.
## LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

As the movant, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

2

Administrative remedies are primarily "unavailable" to prisoners where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Dole*, 438 F.3d at 809 (remedies unavailable where prison officials "do not respond to a properly filed grievance"); *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir.2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba*, 458 F.3d at 680, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004) (remedies unavailable where prison personnel prevent prisoner access to grievance forms). "[U]navailability" may also extend beyond "affirmative misconduct" to include omissions by prison personnel, particularly failing to inform the prisoner of the grievance process. *See King*, 781 F.3d at 895–96.

## II.
## FINDINGS OF FACT

As a result of the evidentiary hearing and after due consideration the record in its entirety, the Court enters the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[2]

### A.  Procedural History

Plaintiff Tami Duvall is an inmate at Rockville Correctional Facility ("RCF"). On April 5, 2019, she filed the amended complaint. Dkt. 15. The amended complaint alleges that Ms. Duvall was permanently banned from participating in the USDOL Apprenticeship program by her

---

[2] Certain issues of fact cannot be resolved in this case without making a determination of which version of the pivotal events was more credible. In making this and other determinations as to contested issues, the court has considered the customary factors associated with credibility–e.g., demeanor, detail, consistency, opportunity to observe or perceive the events testified to, etc. It has not relied solely on the number of witnesses who related a particular event or on any other single factor.

previous employer, Televerde, in retaliation for accusing the company of fraudulent activity. *Id.* at 3. The amended complaint also alleges that all RCF prisoners hired by Televerde since Ms. Duvall's termination have been younger than Ms. Duvall. *Id.* at 4.

The Court screened the amended complaint pursuant to 28 U.S.C. § 1915A(b). Dkt. 22. Ms. Duvall was permitted to proceed on First Amendment retaliation and Fourteenth Amendment class-of-one equal protection claims against Ms. Ferguson and Mr. Gray. *Id.* at 3. She was also allowed to proceed on failure to intervene claims against Mr. Evans, Mr. Carter, Mr. Hendrix, Dr. Nally, and Ms. Burkett on the theory that these officials were made aware of this unlawful conduct and failed to take corrective action. Dkt. 49, p. 2.[3]

The defendants answered the amended complaint and raised failure to exhaust available administrative remedies as an affirmative defense. Dkt. 52, p. 5, para. 7; dkt. 65, p. 5, para. 3. On November 15, 2019, the Court issued an Entry Directing Development of Exhaustion Defense and Issuing Partial Stay. Dkt. 67. On January 6, 2019, the defendants filed a motion to resolve the exhaustion defense at a *Pavey* hearing. Dkt. 81. The Court granted this motion and appointed counsel to represent Ms. Duvall at the *Pavey* hearing. Dkts. 87, 101.[4]

The Court held a *Pavey* hearing on November 18, 2021. Dkt. 145. The hearing was adjourned and reconvened on March 22, 2021. *Id.*; dkt. 182. Prior to the conclusion of the *Pavey* hearing on March 22, 2021, Ms. Burkett withdrew her exhaustion defense.

---

[3] Ms. Duvall was also allowed to proceed on claims against defendants Angela Lambert and Ron Henton. Dkt. 22, p. 3; dkt. 49, p. 2. However, these defendants entered into a settlement agreement with Ms. Duvall, and the claims against them were dismissed with prejudice. Dkts. 166, 176.
[4] The Court heartily thanks recruited counsel Kandi Hidde, Derrian Smith, and Brock Bucher for their excellent written and oral advocacy on behalf of Ms. Duvall.

**B.  IDOC Grievance Process and Classification Appeals Process**

The Indiana Department of Correction ("IDOC") maintains an Offender Grievance Process. *See* Exh. 7 (grievance process in effect from April 5, 2015 to September 30, 2017); Exh 8 (grievance process in effect beginning October 1, 2017). The purpose of the grievance process is "to provide an administrative process where offenders committed to [IDOC] may resolve concerns and complaints relating to their conditions of confinement." Exh. 7, p. 1. "Although an offender may use one or more methods to resolve problems, the grievance process . . . is the only administrative remedy officially recognized by [IDOC] for the resolution of offenders' grievable issues." *Id.* at 3.

During the time relevant to this action, the IDOC offender grievance process had four steps: (1) an informal attempt to resolve the issue; (2) submission of a written formal grievance; (3) submission of a facility-level appeal of the grievance response; and (4) submission of a department-level appeal of the facility appeal response. Exh. 7, pp. 13-23; Exh. 8, pp. 8-13.

The grievance process lists 14 categories of complaints that are non-grievable and inappropriate to the grievance process. Exh. 7, pp. 4-5; Exh. 8, pp. 3-4. The list is non-exhaustive. Exh. 7, p. 4; Exh. 8, p. 4. The list of non-grievable issues includes "[c]lassification actions or decisions, which include loss of a job, change in security level, facility transfers, and bed moves (a separate classification appeals process is in place for this purpose.)" Exh. 7, p. 4; Exh. 8, p. 3.

In addition to the grievance process, IDOC has a classification appeals process. Paul Slaven, who holds the position of Classification Supervisor at RCF, testified at the *Pavey* hearing for the defendants. According to Mr. Slaven, the classification appeals process involves obtaining a classification appeal form from the prison law library. The inmate fills out a portion of the form and sends it to the facility's classification supervisor within 10 days of the issue that is

being appealed. The classification supervisor then investigates and sends his findings to the Warden or the Warden's designee. If the inmate is dissatisfied with the facility level decision, she may appeal that decision to the IDOC central office.

Mr. Slaven also testified that inmates may not use the grievance process to grieve the loss of their prison employment. Instead, inmates must raise those issue through the IDOC classification appeals process. At the same time, he testified that complaints about retaliation or discrimination by IDOC officials must be brought through the offender grievance process.

On cross examination, Mr. Slaven was asked which process an inmate should use to complain that she had lost her prison employment due to retaliation or discrimination. Mr. Slaven testified that the inmate would need to raise allegations of discrimination or retaliation through the grievance process. However, the inmate would not be able to get her job back by filing a grievance. For that, he testified, the inmate would need to file a classification appeal.[5]

Mr. Slaven testified that, in his experience, about one in three inmates is confused about how these policies interact. Further, only a few IDOC officials are trained on how to use the classification appeals process. Mr. Slaven appeared to be a reliable and credible witnesses. The Court accepts Mr. Slaven's testimony as true.

At the *Pavey* hearing, Ms. Duvall testified that she was informed about the offender grievance process and the classification appeals process upon her arrival at RCF. She has used the grievance process on multiple occasions, both before and after her complaints involving Televerde, and she knew how the grievance process worked at the time relevant to this action.

---

[5] The defendants attempted to admit the IDOC classification appeals policy as an exhibit at the *Pavey* hearing. *See* Exh. 12. This policy is 13 pages long. *Id.* Unfortunately, the exhibit the defendants proffered is missing pages 2-9. *Id.* Nevertheless, Ms. Slaven's broad overview of the classification appeals process at the *Pavey* hearing is sufficient, in this case, to distinguish the purposes of the two processes.

### C.  Ms. Duvall's Termination and Attempts to Exhaust her Claims

Ms. Duvall began working for Televerde on February 1, 2016. On November 23, 2016, she was found guilty at a prison disciplinary proceeding. As a sanction for this disciplinary conviction, she was suspended from all prison employment for a period of six months. On December 2, 2016, she was reclassified "due to discipline" at a classification hearing. Exh. 14. The disciplinary conviction and classification change caused Ms. Duvall to lose her job at Televerde.

On May 1, 2017, toward the end of her employment suspension, Ms. Duvall began writing to Televerde officials about the possibility of getting her job back when her suspension ended. She did not receive a response to her inquiries.

On May 27, 2017, Ms. Duvall's employment suspension ended. Shortly thereafter, she formally reapplied for her old job at Televerde. She did not receive a response to her application.

On July 4, 2017, Ms. Duvall filed her first informal complaint through the grievance process regarding her employment with Televerde. Exh. 2. She did not suggest that she had been retaliated against or discriminated against because of her age. She provided the following description of the issue on her informal complaint form:

> I worked at Televerde from 2/1/16 →11/23/17. I left due to a Class B write-up I received on the dorm. Sanctions stated I was removed from program for 6 months. From 5/1/17 til present, I have written Televerde 7 times. On 5/24/17, Ms. Taylor referred me and a new application was submitted along with references. I have not received a response from anyone. While at Televerde, my stats were always above average. I have less than 1000 hrs to complete the program. I can not (sic) find IDOC policy which prohibit[s] me from reclassing back to the program. I am asking to be reclassed back to Televerde.

*Id.*

On July 11, 2017, Ms. Duvall's informal complaint was denied. The IDOC official who denied the complaint provided the following explanation: "Your complaint concerns a

Classification issue or action. These types of issues or actions are to be appealed through their own appeal process and not through the grievance process." Exh. 3.

On July 13, 2017, Ms. Duvall met with Ms. Ferguson, Mr. Henton, and Mr. Gray. According to Ms. Duvall, they told her that she was banned for life from working for Televerde. However, they also told her that she could attend any other vocational program of her choice.

On July 19, 2017, Ms. Duvall wrote a letter to Jerry Newlin, who works as an internal affairs investigator at RCF, for advice on how to proceed. On July 20, 2017, Mr. Newlin sent Ms. Duvall the following letter:

> I am in receipt of your letter dated July 19, 2017 in regard to your employment with Televerde. It would be my direction if you are not satisfied with the response that you received concerning your employment that you file your concerns through the offender grievance process. The letter that you have written will clarify your position. As an investigator, I have no authority to make an administrative decision in this matter. The grievance process will allow you that response.

Exh. 4.

On July 24, 2017, Ms. Duvall filed a second informal complaint. Exh. 5. She provided the following description of the issue on her informal complaint form:

> This is being filed on Jerry Newlin's advice. I lost my job at Televerde on 11/23/16 due to 215B. I waited 6 month sanction and was referred shortly after 5/24/17. New application and references were submitted per Televerde request. On 7/13/17 meeting @OSB with P. Ferguson, R. Henton, + T. Gray, P. Ferguson stated "I was not a good fit" + "I was banned from Televerde for life." I have less than 1000 hrs left to complete program. I can't find IDOC policy that prohibits me from finishing program after eligibility is restored. I am being discriminated against by staff not following the Mission & Vision statement of IDOC. I have a right to know what I am being accused of and I have a right to be treated fairly. Policy 04.03.103.

*Id.*

On July 26, 2017, Ms. Duvall's second informal complaint was denied. Exh. 6. The IDOC official who denied the informal complaint provided the following explanation:

Your complaint concerns a Classification issue or action. These types of issues or actions are to be appealed through their own appeal process and not through the grievance process . . . You can not (sic) grieve jobs . . . You may do an appeal and get your appeal through your caseworker. I spoke with Mr. Newlin about this matter of handling the classification change.

*Id.*

On July 28, 2018, Ms. Duvall submitted her first classification appeal. She provides the following description of the issue on the classification appeal form:

I was refused readmittance to PEN/Televerde. After being found guilty of a 215B and removed from programming, I patiently waited out the 6-month sanction. The most current published Executive Directive #11-71 states that for any reason an offender is terminated from a program will be ineligible for enrollment to programming for 180 days. There is no policy that states or lists any reasons why an offender can not have the opportunity to return to the program once the sanction is served.

On July 13, 2017, Pam Ferguson verbally reported to me that I would not be allowed to return to Televerde. She stated I was not a good fit. She would not be specific as to what I was being accused of, in that she said she couldn't prove it but she believed I had something to do with some slanderous mail. However, I never participated in anything slanderous. I believe Pam Ferguson is biased against me and I was terminated based on mere speculation. This act is considered wrongful, malicious, and abusive, having taken away my ability to earn extra good time and to financially support myself. My job performance scorecards showed that I met or exceeded expectations every month that I worked at Televerde. I did not receive any conduct reports at Televerde. After receiving correspondence from Jerry Newlin on July 20, 2017, upon his direction I filed a grievance. It was deemed a non-grievable issue. It was recommended I file a classification appeal. Policy violations: Executive Directive #11-71; Conduct Criteria for Program Admittance. Previous violations of 02-04-101 and 04-03-103 will show that I have been discriminated against. I can prove that from the initial CAB of 215B through this action, policy has been violated. I am requesting to be reclassed to PEN/Televerde.

*Id.*

Ms. Duvall testified that she submitted this classification appeal to Heather Robertson, who was the classification supervisor at her facility at the time, and that she did not receive a response.

On August 27, 2017, Ms. Duvall sent a letter to Mr. Carter, Mr. Evans, Mr. Nalley, Mr. Hendrix, and Ms. Burkett Exh. 15. This letter summarized the efforts Ms. Duvall had taken

up to this point to get her job back with Televerde. *Id.* The letter did not state that Ms. Duvall was retaliated against for accusing the company of fraudulent activity, nor did it state that she was being discriminated against because of her age. *Id.* Ms. Duvall did not receive a response to her letter.

On November 3, 2017, Ms. Duvall filed a second classification appeal. Exh. 10. Rather than submitting the classification appeal to the classification supervisor, she submitted it directly to the IDOC central office. She stated that she was appealing the decision "[t]o ban me from finishing the Televerde program sponsored by USDOL at RCF." Exh. 10. She provided a detailed report of her situation and her attempts to get her job back. *Id.* For the first time, Ms. Duvall stated that she was being punished for accusing Televerde of fraudulent activity. *Id.* She stated, "[T]he fact is I wrote a letter to Televerde Corporate prior to my Conduct Report, informing them of my concern of fraudulent claims being asserted on the Endicia Campaign." *Id.* This classification appeal did not state that Ms. Duvall was being discriminated against because of her age. *Id.* Ms. Duvall did not receive a response to her second classification appeal.

Ms. Duvall did not make any additional attempts to resolve her complaints administratively. She filed this lawsuit a year later on November 30, 2018. Dkt. 1.

## III.
## CONCLUSIONS OF LAW

After reviewing the exhibits and hearing testimony, the Court concludes that Ms. Duvall was required to raise her complaints about the defendants' retaliation and discrimination through the offender grievance process. The grievance process is not intended to reclassify inmates for employment or to permit inmates to appeal the denial of a job application. Nevertheless, this process would have alerted IDOC officials to the alleged retaliation and discrimination and allowed them the opportunity to take corrective action. Such corrective action might have included

10

providing additional training to officials at RCF to prevent retaliation and discrimination in the future.

The fact that the grievance process would not have provided Ms. Duvall with the remedy she was seeking did not excuse her from raising her complaints through the grievance process before bringing suit in federal court. The Supreme Court has held that a prisoner must exhaust administrative remedies, even if those remedies cannot provide the prisoner with the type of relief she seeks, before filing a civil rights lawsuit. *Booth v. Chamber*, 532 U.S. 731 (2001) (holding that the PLRA requires administrative exhaustion prior to inmate's filing of civil rights lawsuit even where the grievance process does not permit award of money damages and the inmate seeks only money damages, as long as grievance tribunal has authority to take some action in response to inmate's complaint); *see also Ngo*, 548 U.S. at 85 ("prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process").

The grievance process did not preclude Ms. Duvall from using the classification appeals process to try to get her job back at Televerde. The grievance process explicitly provides that "an offender may use one or more methods to resolve problems" at the facility. Exh. 7, p. 3. Thus, Ms. Duvall could have raised complaints about the conditions of her confinement—*i.e.*, unconstitutional retaliation and discrimination—through the grievance process, and simultaneously challenged the denial of her job application through the classification appeals process.

It is true that an IDOC official rejected Ms. Duvall's informal complaints and told her to use the classification appeals process to complain about the loss of her job at Televerde. However, this was due to Ms. Duvall's own failure to articulate allegations of retaliation or discrimination in

11

her informal complaints. Instead, she merely stated that her job application at Televerde had been denied. If Ms. Duvall had mentioned retaliation or discrimination in her informal complaint, the official's instruction to file a classification appeal may well have been affirmative misconduct, such that the grievance process would not have been "available" to Ms. Duvall. But given the information Ms. Duvall provided in her informal complaint, the Court finds that the official's instruction to file a classification appeal was appropriate. The Court also finds that the grievance process was available to Ms. Duvall regarding the allegations of discrimination and retaliation set forth in the amended complaint.

The interplay between the grievance process and the classification appeals process is far from user-friendly, but it is not "so opaque that it [is], practically speaking, incapable of use." *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). The PLRA does not demand that a correctional facility's grievance processes be "sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning. When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* It is only when a grievance processes is so complicated that it becomes "unknowable—so that no ordinary prisoner can make sense of what it demands—[that] it is also unavailable." *Id.*

In *Manley v. Sevier*, the Seventh Circuit rejected an inmate's argument that the relationship between the IDOC grievance process and the IDOC classification appeals process was so complicated that the grievance process was not "available" for purposes of the PLRA. 746 F. App'x 594 (7th Cir. 2019). Manley sued IDOC officials in federal court, alleging that he was subjected to retaliation in his housing assignment following a disciplinary conviction. *Id.* at 595. Rather than raise these complaints through the grievance process, Manley tried to raise them through the

classification appeals process and the IDOC disciplinary appeals process. *Id.* The Seventh Circuit reasoned that Manley's "primary argument, therefore, boils down to whether a district court is entitled to enforce strict compliance with the prison's grievance procedures. It is." *Id.* at 596. "Further, Manley's assertion that he was confused by the process—even if it were relevant—is unpersuasive. A seasoned grievance filer, he knew that IDOC procedure requires that retaliation claims be brought through the Offender Grievance Process." *Id.*

Like Manley, Ms. Duvall used the grievance process to file grievances about prison conditions on multiple occasions, and her stated confusion about how to use the grievance process to allege retaliation and discrimination is unpersuasive. The grievance process was available to Ms. Duvall, and she failed to raise her complaints about retaliation or discrimination through the grievance process before she initiated this action. Accordingly, the Court accepts the defendants' exhaustion defense, and the claims against them are dismissed without prejudice.

## IV.
## SUMMARY AND FURTHER PROCEEDINGS

The Court accepts the defendants' exhaustion defense. The claims against Ms. Ferguson, Mr. Gray, Mr. Carter, Mr. Evans, Mr. Hendrix, and Mr. Nally are **DISMISSED WITHOUT PREJUDICE**.

The only remaining defendant is Charlene Burkett. The Court will issue a pretrial schedule setting forth deadlines for resolving the claims against her in due course.

The **clerk is directed** to terminate Pam Ferguson, Tom Gray, Rob Carter, Doug Evans, James Hendrix, and John Nally as defendants on the docket.

The Court again expresses its sincere thanks to recruited counsel for agreeing to represent

Ms. Duvall at the *Pavey* hearing. The **clerk is directed** to remove Ms. Hidde and Mr. Bucher as

recruited counsel on the docket.

**IT IS SO ORDERED**.

Date:    4/27/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TAMI LAINE DUVALL
 4R-J3
ROCKVILLE - CF
ROCKVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
811 West 50 North
Rockville, IN 47872

Brock C. Bucher
FROST BROWN & TODD LLC.
201 N. Illinois Street Ste 1900
P.O. Box 44961
Indianapolis, IN 46244

Kandi Kilkelly Hidde
FROST BROWN TODD LLC (Indianapolis)
khidde@fbtlaw.com

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov