UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMI LAINE DUVALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03768-SEB-DLP |
| ) | |
| CHARLENE BURKETT, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Tami Duvall is a prisoner at Rockville Correctional Facility. She brings this lawsuit following the refusal of prison officials and employees of Televerde, a private contractor, to reinstate her prison employment. She alleges that the failure of these individuals to reinstate her employment amounts to retaliation in violation of the First Amendment and discrimination in violation of the Fourteenth Amendment. She also alleges that Charlene Burkett, the Director of the Ombudsman Bureau for the Indiana Department of Correction, failed to intervene after she learned that Ms. Duvall was the subject of unlawful retaliation.

Ms. Duvall's claims against the Televerde defendants have been dismissed pursuant to a settlement agreement. Dkt. 178. Her claims against prison officials have been dismissed without prejudice for failure to exhaust available administrative remedies. Dkt. 183. The only remaining claim is against Ms. Burkett for failing for intervene in the allegedly unlawful retaliation.

Ms. Burkett's motion for summary judgment is now before the Court. The Court finds that Ms. Burkett had neither the duty nor the authority to intervene on Ms. Duvall's behalf to protect her from retaliation. Accordingly, the motion for summary judgment is **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. BACKGROUND

### A. Ms. Duvall's Claims

The verified amended complaint makes the following allegations. On February 1, 2016, Ms. Duvall began working for Televerde through the USDOL Apprenticeship Program. On November 23, 2016, she was found guilty at a prison disciplinary proceeding. As a sanction for this disciplinary conviction, she was suspended from all prison employment for six months. The disciplinary conviction caused Ms. Duvall to lose her job at Televerde. *See* dkt. 15 (amended complaint); dkt. 22 (screening order); dkt. 49 (reconsideration of additional claims).

On May 1, 2017, toward the end of her employment suspension, Ms. Duvall began writing to Televerde officials about the possibility of getting her job back when her suspension ended. She did not receive a response to her inquiries. On May 27, 2017, Ms. Duvall's employment suspension ended. Shortly thereafter, she formally reapplied for her old job at Televerde. She did not receive a response to her application. *Id.*

Ms. Duvall claims that she was informed by Assistant Superintendent Pam Ferguson, Televerde Call Center Director Ron Henton, and PEN Industries Manager Tom Gray that she was permanently banned from participating in the USDOL Apprenticeship program. According to Ms. Duvall, they told her that their decision to terminate her from the program was because she wrote "slanderous" mail about Televerde, which caused an internal audit. Ms. Duvall agrees that she wrote a letter to Televerde's corporate headquarters that caused an audit, but she contends that she wrote the letter to inform the company about fraudulent activity. *Id.* She has included a copy of this letter in opposition to the summary judgment motion. Dkt. 219-1, pp. 62-63.

Ms. Duvall claims that Ferguson, Henton, and Gray refused to reinstate her employment with Televerde because of the letter she wrote, which amounts to retaliation in violation of the First Amendment. She claims that Charlene Burkett, the Director of the Ombudsman Bureau for the Indiana Department of Correction, failed to intervene after she learned that Ms. Duvall was the subject of unlawful retaliation. The amended complaint makes the following allegations about Ms. Burkett's failure to intervene:

> [Ms. Burkett] was legally responsible for operations and direct supervision for employees at Rockville Correctional Facility and for the welfare and overall well-being for all prisoners. After [she] was notified of wrong doings, [she] did not intervene and secure that all United States Constitution and laws were upheld. [She was] made aware of the violations more than once and failed to act accordingly.

Dkt. 15, p. 8.

### B. Duties of the IDOC Ombudsman Bureau

The Ombudsman Bureau is an independent state agency, and its duties are defined by statute. *See* Ind. Code §§ 4-13-1.2-1 to 9. Employees of the Ombudsman Bureau "investigate and resolve complaints that the department of correction endangered the health and safety of any person, or that the department of correction violated specific laws, rules, or written policies." Ind. Code § 4-13-1.2-2. The decision to investigate or resolve complaints is discretionary. Ind. Code § 4-13-1.2-5(a). However, "[i]f the ombudsman does not investigate a complaint, the ombudsman shall notify the complainant of the decision not to investigate and the reasons for the decision." Ind. Code § 4-13-1.2-5(c).

Ms. Burkett has submitted an affidavit that provides additional information about her duties as the Director of the Ombudsman Bureau. *See* dkt. 211-6. According to Ms. Burkett, "As the Director of the Bureau, I am not involved in making decisions about work or program assignments at Rockville Correctional Facility." *Id.* at para. 13. She also says that she "did not have the authority to reinstate Ms. Duvall to the position she sought with Televerde because the Bureau can make recommendations to the Indiana Department of Correction but cannot force the Indiana Department of Correction to implement the Bureau's recommendations." *Id.* at para. 14.

### C. Communications Between Ms. Duvall and Ms. Burkett

Ms. Duvall submitted a complaint to the Ombudsman Bureau on August 5, 2017. *See* dkt. 211-1. In her complaint, she stated that she had worked for Televerde, that her employment was terminated because of a disciplinary conviction, and that her employment was not reinstated after her disciplinary sanction expired. *Id.* at 1-2. She also claimed that Ferguson told her that her employment would not be reinstated because she had sent some "slanderous" mail about Televerde that caused an internal audit at the company. *Id.* at 2. The complaint to the Ombudsman Bureau

4

does not explicitly mention retaliation. Instead, it claims that Ms. Duvall did not send any "slanderous" mail to Televerde and that the refusal to reinstate her employment violated IDOC policy. *Id.*

Ms. Duvall sent a letter to the Ombudsman Bureau on August 25, 2017. *See* dkt. 211-2. In the letter, Ms. Duvall again denied sending any "slanderous" mail to Televerde. *Id.* at 2. However, the letter goes further than the original complaint by suggesting that "if" Ms. Duvall had sent a communication to Televerde, then refusing to reinstate her employment based on this communication would amount to retaliation in violation of the First Amendment. *Id.* at 3-6.

Ms. Burkett sent a letter to Ms. Duvall on September 22, 2017. *See* dkt. 211-3. In the letter, Ms. Burkett instructed Ms. Duvall to complete the classification appeals process at her facility before seeking relief through the Ombudsman Bureau. *Id.* Ms. Burkett informed Ms. Duvall that she was closing her file, but that Ms. Duvall should inform her if she suspects "a break in DOC policy or procedure" or if she feels her health or safety are being threatened. *Id.*

Ms. Duvall responded to Ms. Burkett's letter on November 13, 2017. *See* dkt. 211-4. She discussed her attempts to exhaust her facility-level remedies before seeking the Ombudsman Bureau's assistance and asked Ms. Burkett to open an investigation. *Id.*

Ms. Burkett responded to Ms. Duvall's letter on February 7, 2018. *See* dkt. 211-5. The letter indicated that Ms. Duvall had discussed the matter with her counselor on February 5 and asked Ms. Duvall to remain patient while her counselor reviews the matter. *Id.*

In her affidavit, Ms. Burkett explains her decision not to investigate Ms. Duvall's complaint. She says that she exercised her discretion not to investigate "based on the need for Ms. Duvall to handle her complaint through the correctional facility's process because the granting of work and program assignments is a facility decision." Dkt. 211-6, para. 11.

### D. Motion for Summary Judgment

Ms. Burkett has moved for summary judgment. In support of this motion, she argues that Ms. Burkett did not have a duty or the authority to intervene on Ms. Duvall's behalf. *See* dkt. 212, pp. 4-5.

In response, Ms. Duvall argues that the refusal to reinstate her employment with Televerde was a direct result of her decision to alert the company about instances of fraud. Dkt. 219. She has also submitted an exhibit in opposition to the motion for summary judgment. Dkt. 219-1. This exhibit includes an affidavit from Ms. Duvall claiming that "Televerde Call Center Director Ron Henton, PEN Manager Tom Grey, and Assistance Warden Pam Ferguson met with me on 7/13/2017, informing me that I would NEVER return to Televerde. I was BANNED for the duration of my prison stay due to me writing slanderous mail to Televerde Corporation." *Id.* at 3. The affidavit also states that Ms. Duvall's correspondence was not "slanderous" but was instead a good faith attempt to alert the company about fraudulent activity. *Id.*

Ms. Duvall's exhibit contains other documents as well. These documents include an affidavit from prisoners Sara Mills and Dawn Timko. According to Ms. Mills and Ms. Timko, Televerde prisoner-employees worked on the "Endicia campaign," which provides low-cost shipping alternatives to FedEx and UPS. Although prisoner-employees were instructed to inform callers that they were "calling on behalf of Endicia," some prisoner-employees would falsely say they were calling on behalf of the United States Post Office. Dkt. 219-1, pp. 4-6. The exhibit also contains a letter Ms. Duvall wrote to Televerde's Vice President of Operations on October 16, 2016, complaining about this allegedly fraudulent activity. *Id.* at 62-63.

Ms. Duvall's exhibit also includes her monthly performance measures during her time with Televerde. *Id.* at 22-34. These measures state that Ms. Duvall met or exceeded expectations from

6

April 2016 through September 2016. *Id.* There is no evidence that her performance ever fell below expectations or that she engaged in unprofessional conduct during her time with Televerde. *Id.* Indeed, in July of 2016, Ms. Duvall was listed as a "top performer" on the Endicia Campaign. *Id.* at 34.

### III. DISCUSSION

Ms. Duvall brings this constitutional claim against a state actor under 42 U.S.C. § 1983. Personal liability under § 1983 requires personal involvement in the constitutional violation. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). However, even where the defendant did not personally commit the underlying violation, she may nevertheless be held liable for that violation under the theory that she was aware of the ongoing constitutional violation and failed to act within her authority to stop that violation. This is known as a "failure to intervene" claim. It is somewhat common in the context of excessive force, where an officer allegedly stands by and does nothing while a fellow officer physically assaults a prisoner, an arrestee, or a member of the public. *E.g.*, *Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). But a failure to intervene claim may also be brought, in some circumstances, against an administrative prison official who learns about a constitutional violation through her official duties, such as reviewing prisoner grievances, and summarily denies or refuses to investigate the prisoner's complaint. *See Hayes v. Snyder*, 546 F.3d 516, 526-27 (7th Cir. 2008).

To prevail on a failure to intervene claim, the plaintiff must establish that she suffered an underlying constitutional violation. *See Filmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutional impermissible failure to intervene because there was no violation that compelled intervention."). In this case, Ms. Duvall claims that Ms. Burkett failed to intervene after learning that Henton, Ferguson, and Gray were engaged in ongoing retaliation

7

against her for sending a letter to Televerde's Vice President of Operations. Thus, as a threshold matter, Ms. Duvall must present evidence that Henton, Ferguson, or Gray engaged in unlawful retaliation.

To prevail on a First Amendment retaliation claim, the plaintiff must establish three elements. First, she must show that she engaged in protected First Amendment activity. Second, she must show that an adverse action was taken against her that would likely deter a person of ordinary firmness from engaging in additional First Amendment activity. Third, she must show that her protected conduct was at least a motivating factor of the adverse action. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

The Court notes that Ms. Duvall had an unblemished employment record during her time at Televerde. She suffered an adverse action after she spoke up about her concerns of fraudulent activity by her co-workers—albeit several months after the First Amendment activity took place—and Ms. Burkett has not provided any evidence or argument suggesting that the refusal to reinstate Ms. Duvall's employment arose from Ms. Duvall's own "unprofessional conduct" or another non-retaliatory motive. *See* dkt. 65, p. 4, para. 18 (Ms. Burkett's Answer to the Amended Complaint).

Nevertheless, even if Ms. Duvall could establish an underlying case of retaliation, Ms. Burkett would still be entitled to summary judgment because there is no evidence that she had a duty, or even the ability, to intervene on Ms. Duvall's behalf. The Ombudsman Bureau is an independent state agency tasked with reviewing complaints of unlawful activity at Indiana correctional facilities. *See* Ind. Code § 4-13-1.2-2. It is required to review those complaints, but it has discretion to investigate those complaints. Ind. Code § 4-13-1.2-5(a). Further, its recommendations are merely advisory; Ms. Burkett could not force prison officials or Televerde to reinstate Ms. Duvall's employment. dkt. 211-6, para. 14. Unlike the case of an officer who could

8

have, but chose not to, intervene and protect a prisoner from excessive force, Ms. Burkett was powerless to put an end to any unlawful retaliation that may have occurred in this instance.

The record shows that Ms. Burkett reviewed Ms. Duvall's complaint and letters and determined that an investigation was unnecessary at that time. She sent letters informing Ms. Duvall of her decision, as is required by statute, and encouraged her to continue working with officials at her facility to seek reinstatement. She fulfilled her statutory obligations as the Director of the Ombudsman Bureau. Accordingly, Ms. Duvall has not established that Ms. Burkett failed to act within her authority to protect her from unlawful retaliation, and the motion for summary judgment is **GRANTED**.

## IV. CONCLUSION

The motion for summary judgment, dkt. [210], is **GRANTED**. The claim against Charlene Burkett is **DISMISSED WITH PREJUDICE**. Final judgment in accordance with this Order and the Order at dkt. 183 shall now issue.

**IT IS SO ORDERED**.

Date: 1/13/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

TAMI LAINE DUVALL
 4R-J3
ROCKVILLE - CF
ROCKVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
811 West 50 North
Rockville, IN 47872

Gregory S. Loyd
INDIANA ATTORNEY GENERAL
gregory.loyd@atg.in.gov

Patrick Ellery MacDonell
INDIANA ATTORNEY GENERAL
Patrick.Macdonell@atg.in.gov